UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                   :
            In re                  :     **OPINION**
                                   :
       M/V DG HARMONY              :     98 Civ. 8394 (DC)
    and Consolidated Cases.        :
                                   :
- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**    (See last page)

**CHIN, D.J.**

In these consolidated cases arising out of the loss of the M/V DG HARMONY, certain non-vessel carrier defendants (the "Carrier Defendants") seek indemnification from defendant PPG Industries, Inc. ("PPG") for amounts they paid to settle claims asserted against them by cargo and vessel interests and for their litigation expenses.[1] Before the Court are the Carrier Defendants' motions for summary judgment. For the reasons that

---

[1] The Carrier Defendants are: Montemar S.A. d/b/a Pan American Independent Line, Zim Integrated Shipping Services Ltd. f/k/a Zim Israel Navigation Co. Ltd., Zim American Integrated Shipping Services Ltd. f/k/a/ Zim-American Israeli Shipping Co., Zim Do. Brasil Ltda., Senator Lines GmbH, Cho Yang Shipping Co. Ltd. ("Cho Yang"), Direct Container Line/NACA Logistics, Panalpina/Pantanier Express, SeaMates International, Danmar/Danzas, Blue Anchor Line, Econocaribe, IMEX Shipping, Inc., Equipsa, Inc., Shipco Transport, Inc., Satin Air Freight, Inc., Fritz Transportation International, Ambassador Logistics International, Florida Consolidators, Inc., Graybar Navigation, Inc., Seabridge Container Transport, Inc., and Liberty Container Lines.

For purposes of this decision, the term "Carrier Defendants" does not include the vessel interests, and I do not consider at this time the vessel interests' claims for indemnification from PPG.

follow, the motions are denied and summary judgment will be entered in favor of PPG dismissing the claims for indemnification.

## THE FACTS

Although the parties disagree as to the conclusions to be drawn from the facts, the facts are largely undisputed. They are as follows:

On November 9, 1998, the M/V DG HARMONY caught fire. Most of its cargo was destroyed or damaged and the vessel itself was eventually declared a total loss. See In re M/V DG Harmony, 394 F. Supp. 2d 649, 654-56 (S.D.N.Y. 2005).

Numerous lawsuits were filed in this Court by cargo, vessel, and other interests for damages resulting from the casualty. The Carrier Defendants, who had chartered space aboard the HARMONY and issued bills of lading to various shippers of cargo, were sued by cargo owners. One of the Carrier Defendants, Cho Yang Shipping Co. Ltd. ("Cho Yang"), issued a bill of lading to PPG for the ten containers of cal-hypo in question. (1/12/06 Kelly Decl. ¶ 3 & Ex. 1). PPG had booked the containers through Cho Yang. See In re M/V DG Harmony, 394 F. Supp. 2d at 659. The Carrier Defendants were also sued by the vessel owners for hull damage and salvage costs. Lawsuits asserting cargo claims were also brought against certain Carrier Defendants in South America.

The lead cargo plaintiffs in the cases in this Court filed a second amended complaint asserting three causes of action. The first was against the Carrier Defendants for

negligence and breach of their obligations under the bills of lading they issued to the respective cargo owners.  (See 2/28/06 Cardozo Decl. Ex. 1 ¶¶ 3, 6-11).  The second was against PPG for, inter alia, negligence and strict liability.  (Id. Ex. 1 ¶¶ 13-16).  The third was against the Carrier Defendants and PPG, on a joint and several basis, for negligence.  (Id. Ex. 1 ¶¶ 18-19).  Hence, the cargo interests were suing the Carrier Defendants not just for breaching their obligations under their respective bills of lading, but also as tortfeasors.  (See 3/2/06 Pruzinsky Decl. ¶ 5(a)).

      The Independent Carriers Alliance (the "ICA"), of which certain Carrier Defendants were members, operated the tonnage center that made stowage decisions and prepared stowage plans for the voyage in question.  See In re M/V DG Harmony, 394 F. Supp. 2d at 653.  The second amended complaint alleged that the Carrier Defendants "breached . . . their duties and obligations as vessel managers, bailees, carriers and/or others owing a duty of care to the plaintiffs, were negligent, and were otherwise at fault."  (2/28/06 Cardozo Decl. Ex. 1 ¶ 8).

      The majority of the claims in these consolidated cases were settled during the course of negotiations in 2002.  In a memorandum to various counsel for the Carrier Defendants addressing settlement, counsel for the vessel interests wrote:

> One of the larger issues appears to be whether or not we intend to seek reimbursement from PPG for amounts which we are now paying to cargo.  I have again reviewed [McDermott, Inc. v.AmClyde, 511 U.S. 202 (1994)], and a Fourth Circuit case

(Boykin v. China Steel Corporation, 73 F.3d 539 (4th Cir. 1996)). There does appear to be some authority for the proposition that we could seek reimbursement from PPG, at least in the case where PPG was 100% liable and this was a true indemnification situation. Perhaps some of you are more astute than I, but in my view, the issue is less than clear. In any event, since it at least appears that there is a possibility of recovery against PPG, common[] sense would seem to dictate that we should leave the possibility open, and make a decision later regarding if and how we will prosecute PPG.

In the course of my discussions with Hill, Rivkins, [cargo interests' counsel,] we discussed how we would deal with any claims over against PPG. I suggested to [cargo interests' counsel] Tony Pruzinsky that if PPG is held 100% or 90% liable, cargo would be entitled to close to full recovery from PPG. Taking into account the amount received from us, this could result in a recovery in excess of their actual damages. I suggested to Tony that we include a provision in the Agreement to the effect that to the extent their overall recovery (amount awarded against PPG, plus amounts received from us) exceeded their total damages, we would get a refund. Tony thought about it, and called yesterday to advise that they would not enter into any such agreement. Predictably, Tony was of the view that he was not willing to share any potential windfall, since we were certainly not willing to contribute towards any shortfall, if a high percentage of responsibility is attributed to our clients. Significantly, however, Tony advised that he saw no prohibition against us seeking indemnification from PPG, and was not looking for any assignment of our claims.

Under the circumstances, I have framed the Agreement such that we reserve whatever rights we have to seek reimbursement from PPG. I have specifically included a provision in the release which makes it clear that we are reserving our right to prosecute PPG for amounts paid as part of the settlement. I assume that this is

- 4 -

>           acceptable, but we can discuss the issue when
>           we meet.

(Id. Ex. 5 at 2).

The vessel interests, the ICA members, certain non-vessel operating common carriers ("NVOCCs"), and certain cargo interests entered into a stipulation of dismissal, which was so ordered by the Court on June 27, 2003 (the "Stipulation"). The Stipulation resolved all claims, cross-claims, and counter-claims, with prejudice, among the parties to the settlement, except for certain claims against the vessel interests for "the proportionate share of [their] fault." (Id. Ex. 4 ¶¶ 1, 3). Specifically resolved were claims of the cargo plaintiffs based on "any portion of liability attributable to" the NVOCC interests and ICA members. (Id. Ex. 4 ¶ 3). PPG did not participate in the settlement, and the Stipulation provided in part as follows:

>           Any remaining claims by or rights of the
>           OWNERS, ICA GROUP, NVOCC INTERESTS and / or
>           CARGO INTERESTS against the non-settling
>           parties, including, but not limited to [PPG]
>           . . . are specifically reserved and the
>           claims against [PPG] . . . and other non-
>           settling parties are amended to include only
>           liability attributable to those non-settling
>           parties and to exclude any portion of
>           liability attributable to the settling
>           parties including OWNERS, ICA GROUP and NVOCC
>           INTERESTS.

(Id. Ex. 4 ¶ 2). Hence, the Carrier Defendants settled all claims brought against them by the cargo interests, including the tort claims. The settling parties exchanged releases that included similar language purporting to reserve the claims against PPG.

The cargo interests and the vessel interests proceeded to trial on their claims against PPG. The Carrier Defendants did not participate in the trial and at trial I did not consider any claims of any party against the Carrier Defendants or any claims the Carrier Defendants had against PPG or anyone else.

On October 18, 2005, I issued an opinion holding PPG liable to the vessel and cargo interests on their strict liability, negligence, and failure-to-warn claims. I rejected PPG's arguments that the crew was negligent in its firefighting efforts and stowage decisions. See In re M/V DG Harmony, 394 F. Supp. 2d at 655 n.10, 661, 669-70 & nn.29-30, 672 & n.32.

Following the issuance of my decision, the Carrier Defendants sought to press their claims against PPG for indemnification. These motions followed.

## DISCUSSION

The Carrier Defendants seek indemnity from PPG based on common law tort principles as well as under § 4(6) of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. app. § 1304(6). In addition, Cho Yang seeks contractual indemnification based on the bill of lading covering PPG's containers of cal-hypo.

**A. Tort Indemnity**

Under the general maritime law, tort indemnity is available if "a tort has occurred, and there is great disparity in the fault of the parties." Stanley v. Bertram-Trojan, Inc., 781 F. Supp. 218, 220 (S.D.N.Y. 1991). For example, where two parties are at fault, if one party is only "passively negligent"

while the other is "actively negligent," the former can seek indemnification from the latter. In re Kreta Shipping, S.A., No. 96 Civ. 1137 (KMW), 2000 WL 33249253, at *3 (S.D.N.Y. June 21, 2000) (citing Stanley, 781 F. Supp. at 220). A party is actively negligent when it creates an unreasonable risk of harm and passively negligent when it merely fails "to discover or remedy a risk created by a joint tortfeasor." Id. Where two tortfeasors are both actively negligent, however, they cannot seek tort indemnity from each other. See Gordon H. Mooney, Ltd. v. Farrell Lines, Inc., 616 F.2d 619, 625 (2d Cir. 1980) ("[B]ecause [defendant's] negligence contributed to the loss, [defendant] cannot obtain indemnity[.]"); Stanley, 781 F. Supp. at 220 ("Where joint tortfeasors are actively negligent[,] the law refuses to recognize any disparity in fault that would justify shifting the entire loss onto one of the tortfeasors."); In re Am. Exp. Lines, Inc., 568 F. Supp. 956, 964 (S.D.N.Y. 1983) ("A party may sue in admiralty for tort indemnity if he is vicariously liable for the culpable conduct of another, but he may not recover on this theory if he himself has been guilty of negligence.").

Here, the Carrier Defendants were sued for their own active negligence, and not just on the basis of vicarious liability. The cargo plaintiffs alleged that the Carrier Defendants breached "their duties and obligations as vessel managers, bailees, carriers and/or others owing a duty of care to plaintiffs, were negligent, and were otherwise at fault."

(2/28/06 Cardozo Decl. Ex. 1 ¶ 8). By entering into the Stipulation, the Carrier Defendants settled the claims alleging that they were actively negligent. The Carrier Defendants then dropped out of the case, as they did not participate in the trial. They sought to assert their indemnity claims only after the Court issued its ruling.

The Carrier Defendants now argue that because the Court found that "PPG was 100% responsible for the casualty" (Montemar S.A. Mem. at 5), they can pursue their tort indemnity claims against PPG. The argument, however, is foreclosed by the Supreme Court's decision in McDermott, Inc. v. AmClyde. 511 U.S. 202 (1994).

AmClyde was an admiralty case involving a construction accident in the Gulf of Mexico. The plaintiff, McDermott, Inc. ("McDermott"), purchased a 5,000-ton crane from Amclyde and attempted to use it to move an oil and gas production platform from a barge to a steel base. Id. at 204-05. River Don Casting, Ltd. ("River Don") provided a hook and three other companies provided steel slings. A prong on the crane's main hook broke and massive damage to the crane and platform resulted. Hence, several possibilities existed as to the cause of the accident: McDermott's negligent operation of the crane; AmClyde's faulty design or construction of the crane; a defect in River Don's hook; or a defect in one or more of the steel slings. Id. at 205.

Prior to trial, McDermott settled with the three sling defendants, for $1 million, but AmClyde and River Don did not settle. Id. at 204, 205. The claims against AmClyde and River Don went to trial, and a jury found in favor of McDermott, setting McDermott's losses at $2.1 million and allocating responsibility as follows: 32% to AmClyde, 38% to River Don, and 30% jointly to McDermott and the sling defendants. Id. at 204, 206. Judgment was entered against AmClyde for $672,000 (32% of $2.1 million) and against River Don for $798,000 (38% of $2.1 million). Id. at 206. AmClyde and River Don argued that because the amounts awarded against them together with the $1 million in settlement proceeds exceeded McDermott's damages as found by the jury, the amounts awarded against them should be reduced to avoid a double recovery. Id.

The Supreme Court considered the issue of "how a settlement with less than all of the defendants in an admiralty case should affect the liability of nonsettling defendants." Id. at 207. The Court observed that "[i]t is generally agreed that when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement." Id. at 208. The Court noted that there was disagreement "about how that credit should be determined," and reviewed the three principal alternatives identified by the American Law Institute. Id. Ultimately, the Court adopted the third alternative, which it referred to as the "proportionate share approach." Id. 210 & n.9, 217, 221.

> Under the proportionate share approach:
>
> > The money paid [by the settling defendant] extinguishes any claim that the injured party has against the released tortfeasor and also diminishes the claim that the injured party has against the other tortfeasors by the amount of the equitable share of the obligation of the released tortfeasor.

Id. at 209 (quoting Restatement (Second) of Torts § 886A, at 344 (1977)). Under the proportionate share approach, the non-settling defendant's liability is not affected by the settlement with the released tortfeasor. As the Court recognized, the proportionate share rule "does not make a litigating defendant's liability dependent on the amount of a settlement negotiated by others without regard to its interests." Id. at 220; accord Becker v. Poling Transp. Corp., 356 F.3d 381, 386 (2d Cir. 2004) ("AmClyde . . . holds that, when two or more parties have contributed to a plaintiff's injury, liability must be allocated proportionately and a settlement by one tortfeasor does not change the exposure of a non-settling joint tortfeasor").

Hence, in this case, PPG cannot be liable -- on a tort indemnity theory -- for more than its liability as determined at the trial in this case. The Carrier Defendants' settlement of the claims against them cannot be used as a basis to increase PPG's tort liability beyond its proportionate share of liability. As the Eleventh Circuit observed in Murphy v. Florida Keys Electric Cooperative Ass'n:

> An essential tenet of [the proportionate share] approach is that when a tortfeasor settles a claim against it, but does not obtain a release for the other tortfeasors,

> it has settled only its proportionate share
> of the total damages, no more and no less.
> It follows that what remains, and all that
> remains, to be calculated is the compensation
> the nonsettling tortfeasors owe the
> plaintiff. Once that amount is determined at
> trial, the nonsettling tortfeasors are liable
> only to the plaintiff and only to the extent
> the trial verdict determines. Their trial-
> determined liability is in no way affected by
> a settling defendant's negotiated liability.

329 F.3d 1311, 1314 (11th Cir. 2003).

In other words, the Carrier Defendants cannot use the settlement of plaintiffs' claims against them to increase the amount that PPG must pay; PPG cannot be held responsible for more than 100% of plaintiffs' damages.

The Carrier Defendants rely heavily on Boykin v. China Steel Corp., 73 F.3d 539 (4th Cir. 1996), but that reliance is misplaced. Boykin was a wrongful death case involving an explosion from the build-up of methane gas emitted by a cargo of coal on a vessel. Id. at 541. The administrator (Boykin) of the decedent's estate sued the vessel owner (Bergesen), the charterer (China Steel), and the shipper of the coal (U.S. Steel). Boykin settled the claims against Bergesen and, following trial, the district court awarded judgment to Boykin and to Bergesen, finding that the two steel defendants were 100 percent at fault and that Bergesen was zero percent at fault. Id. The court ordered the steel defendants to indemnify Bergesen for the amount it had paid to Boykin in settlement, relying principally on a theory of contractual indemnity based on indemnity provisions in the charter party. Id.

The Fourth Circuit affirmed. It held first that AmClyde had not changed the law with respect to indemnification where there was a written indemnity agreement. Boykin, 73 F.3d at 542. More significantly, it relied heavily on the fact that Bergesen had been found "not a tort-feasor as a matter of fact and not guilty of any fault." Id. at 544. Hence, the Fourth Circuit concluded that the proportionate share rule espoused in AmClyde was inapplicable because the settling defendant was found to be zero percent at fault and therefore not a tortfeasor. Boykin, 73 F.3d at 544.

In the instant case, there has been no judicial determination that Cho Yang and the other Carrier Defendants were not joint tortfeasors. The claims of negligence against them were not before the Court at the trial in this case, as those claims were disposed of in the Stipulation before they could be tried. Although I concluded at trial that, as between the vessel interests and PPG, PPG was 100 percent at fault, the claims of negligence on the part of the Carrier Defendants were not formally before me. Hence, Boykin is distinguishable.

The Carrier Defendants also rely heavily on the language in the Stipulation and related releases reserving their right to proceed against PPG. This reliance is misplaced, for PPG was not a party to the Stipulation and did not consent to any reservation of rights. The Cargo Defendants' reservation of rights did not create any rights if none existed. In discussing the issue of whether a settlement would foreclose the Carrier

Defendants' claims for indemnity from PPG, after reviewing AmClyde and Boykin, counsel for the vessel interests acknowledged the precariousness of the position:

> There does appear to be some authority for the proposition that we could seek reimbursement from PPG, at least in the case where PPG was 100% liable and this was a true indemnification situation. Perhaps some of you are more astute than I, but in my view, the issue is less than clear.

(2/28/06 Cardozo Decl. Ex. 5 at 2). In light of the above, including the settlement of the claims that the Carrier Defendants were actively negligent, this is not a "true indemnification situation."

The Carrier Defendants' contention that PPG must pay more than 100% of the damages caused by its negligence makes no sense. PPG chose to go to trial, but absent its agreement or consent to pay more than its proportionate share, it cannot be required to do so merely because the Carrier Defendants settled the claims against them. To the extent that the Carrier Defendants paid more than they would have had they gone to trial and prevailed, that is the risk they undertook by settling. They avoided the risk of an even higher award and the cost and expense of trial.

The Carrier Defendants' tort indemnity claims are therefore dismissed.

**B.  Statutory Indemnity**

Certain Carrier Defendants also seek indemnity from PPG based on § 4(6) of COGSA, which provides in pertinent part:

>      Goods of an inflammable, explosive, or
>      dangerous nature to the shipment whereof the
>      carrier, master or agent of the carrier has
>      not consented with knowledge of their nature
>      and character, may at any time before
>      discharge be landed at any place or destroyed
>      or rendered innocuous by the carrier without
>      compensation, and the shipper of such goods
>      shall be liable for all damages and expenses
>      directly or indirectly arising out of or
>      resulting from such shipment.

46 U.S.C. app. § 1304(6). The Carrier Defendants argue that under § 4(6), PPG is liable for "all damages and expenses directly or indirectly arising out of or resulting from [the] shipment" of cal-hypo, including the amounts the Carrier Defendants paid to settle the cargo claims.

I hold that the Carrier Defendants are not entitled to indemnity from PPG under § 4(6).

First, the statute does not by its terms provide that a shipper of hazardous cargo must indemnify carriers that have paid amounts to settle claims of negligence and breach of contract brought against them by third parties. The statute does not provide that a shipper is liable, much less strictly liable, for settlement amounts paid by carriers to avoid potential tort and contractual liability to third parties.

Second, the Carrier Defendants have not cited to any cases holding that § 4(6) of COGSA requires a shipper to indemnify a carrier for amounts paid (by the latter) to settle tort and other claims asserted by third parties.[2]

---

[2] The Carrier Defendants' reliance on my decision in Scholastic Inc. v. M/V Kitano, 362 F. Supp. 2d 449 (S.D.N.Y. 2005), is misplaced, for Scholastic is distinguishable. There,

Third, the statute simply does not provide a basis for holding PPG liable for more than 100% of the damages. The statute does not alter the "proportionate share" rule adopted by the Supreme Court in AmClyde.

Accordingly, the statutory indemnity claims are dismissed.

## C. Contractual Indemnity

Cho Yang sits in a somewhat different position from the other Carrier Defendants because it booked the containers of cal-hypo for PPG. The relationship between Cho Yang and PPG is therefore governed by a bill of lading, and Cho Yang was in privity of contract with PPG. The bill of lading provided:

> **5. Certain Rights and Immunities for the Carriers and Other Persons**
>
> . . .
>
> (3) The Merchant [PPG] shall defend, indemnify and hold harmless the Carrier [Cho Yang] against any claim of liability (and any expense arising therefrom) arising from the Carriage of Goods <u>insofar as such claim or liability exceeds the Carrier's liability under this Bill of Lading</u>.

---

Navtrans, the freight forwarder or NVOCC, was proceeding primarily on a contractual indemnity theory, as it was entitled to indemnification from General Carbon, the shipper of the hazardous cargo in question, under the bill of lading as well as § 4(6). Id. at 455, 460-61. In addition, Navtrans was seeking to recover only attorneys' fees and costs; it was not seeking to recover any monies it had paid to settle claims asserted against it by others, nor is there any suggestion in the opinion that Navtrans had paid any sums to cargo owners to settle any claims that it had been negligent. Id. Moreover, I do not believe that the parties in Scholastic raised the issue of whether AmClyde was a bar to indemnification, and I did not discuss the issue in my opinion.

> . . .
>
> **7. Merchant's Responsibility**
>
> . . .
>
> (3) The Merchant undertakes that the Goods are packed in a manner adequate to withstand the ordinary risks of Carriage having regard to their nature and in compliance with all laws, regulations and requirements which may be applicable.
>
> (4) No Goods which are or may become dangerous, inflammable or damaging or which are or may become liable to damage any property or person whatsoever shall be tendered to the Carrier for Carriage without the Carrier's express consent in writing and without the Container or other covering in which the Goods are to be transported and the Goods being distinctly marked on the outside so as to indicate the nature and character of any such articles and so as to comply with all applicable laws, regulations and requirements. If any such articles are delivered to the Carrier without such written consent and marking or if in the opinion of the Carrier the articles are or are liable to become of a dangerous, inflammable or damaging nature, the same may at any time be destroyed, disposed of, abandoned, or rendered harmless without compensation to the Merchant and without prejudice to the Carrier's right to Charges.
>
> . . .
>
> (6) The Merchant shall defend, indemnify and hold harmless the Carrier against any loss, damage, claim, liability or expense whatsoever arising from any breach of the provisions of this clause 7 or from any cause in connection with the Goods <u>for which the Carrier is not responsible</u>.

(1/12/06 Kelly Decl. Ex. 1 (emphasis added)). The bill of lading also included a "clause paramount" incorporating COGSA in its entirety as a term of the contract. (<u>Id.</u> Ex. 1 § 6(1)).

Although it is a closer call, I likewise conclude that Cho Yang is not entitled to indemnity from PPG. The bill of lading contains relatively narrow language. Clause 5(3) provides that Cho Yang is to be indemnified for any "claim or liability exceed[ing its] liability under this Bill of Lading." Similarly, clause 7(6) provides that PPG will indemnify Cho Yang for any loss or liability arising from "any cause in connection with the Goods for which [Cho Yang] is not responsible."

These sentences clearly contemplate that if Cho Yang is required to pay any amount <u>above</u> its liability or <u>above</u> the amount for which it is responsible, PPG will indemnify. But there has been no judicial determination as to Cho Yang's "liability" or "responsibility" or lack thereof. Rather, there has only been a settlement of claims against Cho Yang, including claims that Cho Yang was itself at fault.

In contrast, the indemnification clause in the bill of lading at issue in <u>Scholastic</u>, upon which Cho Yang relies, was much broader, as it provided:

> The Shipper shall indemnify the Carrier for all losses, damages, liabilities, civil penalties and expenses (including attorney's fees) suffered by the Carrier, caused in whole or in part by omission of full disclosure required by this paragraph or by applicable regulations.

362 F. Supp. 2d at 457. Hence, the indemnity clause in <u>Scholastic</u> was not limited, as here, to indemnification for amounts paid <u>above</u> the carrier's share of liability or responsibility.

In the end, then, the indemnity provisions in the bill of lading here do not trump the rules set forth by the Supreme Court in AmClyde. Although parties to a contract can alter the rule set forth in AmClyde, here the bill of lading between Cho Yang and PPG did not do that. Essentially, the bill of lading mirrored the law, as interpreted by the Supreme Court in AmClyde. Moreover, as discussed above, Cho Yang's reliance on Boykin is also misplaced because there the court found, after trial, that the settling defendant was not a joint-tortfeasor, but rather was zero percent at fault. Hence, unlike here, Boykin involved a true indemnification situation.

## CONCLUSION

The Carrier Defendants' motions for summary judgment are denied. Because there are no genuine issues presented for trial, summary judgment is granted in favor of PPG dismissing the Carrier Defendant's claims for indemnification.

SO ORDERED.

Dated: New York, New York
July 6, 2006

DENNY CHIN
United States District Judge

**APPEARANCES:**

For Cargo Plaintiffs:

        HILL RIVKINS & HAYDEN LLP
           By:  Anthony J. Pruzinsky, Esq.
        45 Broadway, Suite 1500
        New York, NY  10006

For PPG Industries, Inc.:

        DLA PIPER RUDNICK GRAY CARY US LLP
           By:  Stanley McDermott III, Esq.
                Camilo Cardozo, Esq.
        1251 Avenue of the Americas
        New York, NY  10020-1104

For Cho Yang Shipping Co. Ltd.:

        NOURSE & BOWLES, LLP
           By:  John P. Vayda, Esq.
                Julia M. Moore, Esq.
        One Exchange Plaza
          At 55 Broadway
        New York, NY  10006-3030

For Senator Lines GmbH:

        CICHANOWICZ CALLAN KEANE VENGROW
          & TEXTOR, LLP
           By: Stephen H. Vengrow, Esq.
        61 Broadway, Suite 3000
        New York, NY  10006-2802

For Zim Integrated Shipping Services Ltd., Zim American
  Integrated Shipping Services Ltd., and Zim Do. Brasil Ltda.:

        DeORCHIS & PARTNERS
           By:  Vincent M. DeOrchis, Esq.
                William E. Lakis, Esq.
        61 Broadway, 26th Floor
        New York, NY  10006-2802

For Montemar S.A. d/b/a Pan American Independent Line:

>    PALMER BIEZUP & HENDERSON
>       By: Richard Q. Whelan, Esq.
>    140 Broadway, 46th Floor
>    New York, NY  10005

For Seabridge Container Transport, Inc. and
  Liberty Container Lines:

>    MENDES & MOUNT LLP
>       By: Stephen V. Rible, Esq.
>    750 Seventh Avenue
>    New York, NY  10019

For other NVOCC Defendants:

>    DOUGHERTY, RYAN, GIUFFRA, ZAMBITO &
>      HESSION
>       By: Peter J. Zambito, Esq.
>    131 East 38th Street
>    New York, NY  10016
>
>    CLARK ATCHESON & REISERT
>       By: Peter Clark, Esq.
>    230 Park Avenue, No. 1066
>    New York, NY  10169

For Vessel Owners:

>    FREEHILL, HOGAN & MAHAR, LLP
>       By: Wayne D. Meehan, Esq.
>           Gina M. Venezia, Esq.
>           Michael Fernandez, Esq.
>    80 Pine Street
>    New York, NY  10005-1759